# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

TYREE HARRIS,

     Petitioner,

v.                          Case No. 3:18-cv-1393-TJC-PDB

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

     Respondents.

_____

## ORDER

## I.   Status

Petitioner, an inmate of the Florida penal system, is proceeding on a pro se Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254 (Doc. 1). He challenges a state court (Duval County, Florida) judgment of conviction for attempted second degree murder. He is serving a 30-year term of imprisonment. Respondents filed a Response (Doc. 8) with exhibits (Docs. 8-1 to 8-3; "Resp. Ex."). Petitioner filed a Reply (Doc. 11). This case is ripe for review.

## II.   Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. See Ledford v.

<u>Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. <u>See Marshall v. Sec'y Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. <u>See Harrington v. Richter</u>, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

<u>Wilson v. Sellers</u>, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of

the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Richter, 562 U.S. at 101 (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

**B. Exhaustion and Procedural Default**

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); see also Pope v. Rich, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that Boerckel applies to the state collateral review process as well as the direct appeal process.").

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim.

> Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[1] supra, at 747–748, 111 S. Ct. 2546; Sykes,[2] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal

---

[1] Coleman v. Thompson, 501 U.S. 722 (1991).

[2] Wainwright v. Sykes, 433 U.S. 72 (1977).

> review of a defaulted claim by showing cause for the
> default and prejudice from a violation of federal law.
> <u>See</u> <u>Coleman</u>, 501 U.S., at 750, 111 S. Ct. 2546.

<u>Martinez v. Ryan</u>, 566 U.S. 1, 9-10 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. <u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010). For a petitioner to establish cause and prejudice,

> the procedural default "must result from some objective
> factor external to the defense that prevented [him] from
> raising the claim and which cannot be fairly
> attributable to his own conduct." <u>McCoy v. Newsome</u>,
> 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting <u>Carrier</u>,
> 477 U.S. at 488, 106 S. Ct. 2639).[3] Under the prejudice
> prong, [a petitioner] must show that "the errors at trial
> actually and substantially disadvantaged his defense
> so that he was denied fundamental fairness." <u>Id.</u> at
> 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106 S. Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

---

[3] <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." <u>Carrier</u>, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001).

<u>Ward</u>, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

## C. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam)

(citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003); <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)). Courts employ a two-part test when reviewing ineffective assistance of counsel claims. <u>See</u> <u>Strickland</u>, 466 U.S. at 687.

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 688. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. <u>Id.</u> at 689. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u> at 687.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 694. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." <u>Id.</u> at 693. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Id.</u> at 687.

<u>Richter</u>, 562 U.S. at 104 (internal citations modified).

There is no "iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test before the other." <u>Ward</u>, 592 F.3d at 1163. Both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation; thus, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Id.</u> (citing <u>Holladay</u>

v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is afforded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, 562 U.S. at 105. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at 105.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014) (internal citations modified). In other words, "[i]n addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." Rutherford v.

_Crosby_, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting _Strickland_'s high bar is never an easy task." _Padilla v. Kentucky_, 559 U.S. 356, 371 (2010).

## III.  Analysis

### A. Ground One

Petitioner argues that his trial counsel was ineffective for failing to object when the prosecutor referred to Petitioner as a "felon" during opening statements.[4] Petitioner raised this claim in his Florida Rule of Criminal Procedure 3.850 motion. The state court denied the claim: "The Defendant alleges that counsel failed to object when he was called a convicted felon in opening statements by the State. This is directly rebutted by the trial transcript which shows the state called his co-defendant a convicted felon, not the Defendant." Resp. Ex. J at 16. Petitioner appealed, and the First District Court of Appeal per curiam affirmed the denial of Petitioner's Rule 3.850 motion without a written opinion. Resp. Ex. M.

This Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record and the applicable law, the Court concludes that the state

---

[4] Petitioner appears to concede that this ground has no merit. _See_ Doc. 11 at 1 ("Petitioner is only going to address three issues (issues two, three, and four) . . . and will concede to the rest.").

court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. Regardless, this claim has no merit. The transcript shows that the state did not refer to Petitioner as a felon during opening statements. Thus, Petitioner is not entitled to federal habeas relief on Ground One.

### B. Ground Two

Petitioner argues that his trial counsel was ineffective for failing to challenge the amended information, "which upgraded Petitioner's charges from aggravated battery with a deadly weapon to attempted first degree murder." Doc. 1 at 12 (capitalization omitted). Petitioner raised this claim in his Rule 3.850 motion, and the state court denied it:

> [T]he Defendant argues counsel was ineffective for failing to challenge the amended information. This allegation fails as the Defendant has failed to show what the challenge could have been, that the challenge would have been successful or that the State would not have merely filed another amended information. Thus, the Defendant has failed to show that there is a reasonably probability that had counsel acted as the Defendant suggests he should have that the outcome would have been any different.

Resp. Ex. J at 16. Petitioner appealed, and the First DCA per curiam affirmed the denial of Petitioner's Rule 3.850 motion without a written opinion. Resp. Ex. M.

This Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. Even assuming the state court's decision is not entitled to deference, Petitioner has failed to show a reasonable probability that the outcome would have been different had counsel challenged the amended information in the manner Petitioner suggests. Thus, Petitioner is not entitled to federal habeas relief on Ground Two.

### C. Ground Three

Petitioner contends that trial counsel was ineffective for failing to adequately investigate and prepare for trial with respect to a viable self-defense strategy and for failing to "honor Petitioner's desire to testify as to the same defense." Doc. 1 at 14 (capitalization omitted). Petitioner disagrees with his counsel's trial strategy and he claims that before trial, he requested counsel canvass the neighborhood for additional witnesses to support Petitioner's

theory of self-defense (that the victim had a knife). <u>See</u> <u>id.</u> at 14-15; <u>see also</u> Doc. 11 at 5. He also advised counsel that Keona Richardson, one of the State's witnesses, took the knife from the victim's hands after the shooting. <u>See</u> Doc. 1 at 15. According to Petitioner, after his counsel conducted depositions, "counsel told [Petitioner] that based on the depositions made by him to state witness that the state had no case and that he will be O.K." <u>Id.</u> At trial, counsel allegedly told Petitioner that "he ran out of time" to conduct further investigation and "convince[d] Petitioner not to testify as to matter in question" because it would contradict counsel's strategy. <u>Id.</u>

In his Rule 3.850 motion, Petitioner argued that his counsel was ineffective for failing to advise him of a self-defense strategy. Resp. Ex. J at 7-8. The state court denied the claim:

> The Defendant further alleges that his attorney failed to advise him that self-defense was a defense to his charge. The record rebuts this argument as even his own motion states that all the witnesses testified about an argument between him and the victim. Further the jury was instructed on the use of justifiable deadly force.

Resp. Ex. J at 16. Petitioner appealed, and the First District Court of Appeal per curiam affirmed the denial of Petitioner's Rule 3.850 motion without a written opinion. Resp. Ex. M.

In his amended Rule 3.850 motion, Petitioner raised the same claim he raises in his Petition. In ruling on the amended Rule 3.850 motion, the

postconviction court did not address the claim because it construed it to be the same claim as raised in the original Rule 3.850 motion. Regardless, this Court finds the claim has no merit.

There is a strong presumption in favor of competence when evaluating the performance prong of the Strickland ineffectiveness inquiry. See Anderson v. Sec'y, Fla. Dep't of Corr., 752 F.3d 881, 904 (11th Cir. 2014). The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" Rompilla v. Beard, 545 U.S. 374, 381 (2005). Thus, Petitioner must establish that no competent attorney would have taken the action that his counsel chose.

Notably, the test for ineffectiveness is neither whether counsel could have done more nor whether the best criminal defense attorneys might have done more; in retrospect, one may always identify shortcomings. Waters v. Thomas, 46 F.3d 1506, 1514 (11th Cir. 1995) (stating that "perfection is not the standard of effective assistance") (quotations omitted). Instead, the test is whether what counsel did was within the wide range of reasonable professional assistance. Ward, 592 F.3d at 1164 (quotations and citation omitted); Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007) ("The question is whether

14

some reasonable lawyer at the trial could have acted as defense counsel acted in the trial at issue and not what 'most good lawyers' would have done.") (citation omitted).

A review of the trial transcript reflects that five eyewitnesses, including the victim, testified that Petitioner and the victim were in an altercation, and after it was over, Petitioner went into his apartment, came back out with an assault rifle, and fired multiple shots,[5] hitting the victim with the last shot. See Resp. Ex. B at 42-46 (Robert White); 77-78, 80-83 (Keona Richardson); 102-05 (Kenisha Milton); 130-33 (Tiffany Whitted); 156-60 (Glenn Leftwich). Additionally, although there was no testimony about the victim having a knife, the jury was instructed on the use of justifiable deadly force. See Resp. Ex. C at 348 ("The attempted killing of a human being is justifiable and therefore lawful if it's necessarily done while resisting an attempt to murder or to commit a felony upon the defendant or to commit a felony in any dwelling house in which the defendant was at the time of the attempted killing.").

Petitioner acknowledges that counsel took depositions, so at least some investigation occurred prior to trial. In hindsight, Petitioner is simply dissatisfied with his counsel's trial strategy. But during trial, Petitioner advised

---

[5] Mr. White testified that Petitioner fired three shots; Ms. Richardson testified that he fired two or three shots; Ms. Milton testified that he fired more than one shot; Ms. Whitted testified that he fired three shots; and Mr. Leftwich testified that he fired two shots. Resp. Ex. B at 45, 83, 104, 131, 160.

15

the trial court that he understood his right to testify but had chosen not to take the stand; he had enough time to speak with his counsel about his decision; he was satisfied with his counsels' representation; and counsel had done everything Petitioner wanted them to do and they did not do anything that he did not want them to do. See id. at 292-93. Considering the record and the applicable law, the Court finds that Petitioner has shown neither deficient performance nor resulting prejudice. Thus, he is not entitled to federal habeas relief on Ground Three.

**D. Ground Four**

Petitioner asserts that his trial counsel was ineffective for failing to argue in his motion for judgment of acquittal that Petitioner did not commit attempted murder, which requires premeditation, and for failing to preserve the issue of insufficiency of the evidence for appellate review. He argues that he only intended to scare the victim, which was obvious because given the close range between him and the victim, if Petitioner intended to kill the victim, he would have shot him in the chest or head. See Doc. 1 at 19-20. According to Petitioner, counsel's ineffectiveness caused him to be convicted of attempted second degree murder rather than aggravated battery with a deadly weapon. Id. at 20.

Petitioner raised this claim in his amended Rule 3.850 motion. In denying the claim, the postconviction court reasoned that Petitioner failed to show

counsel's alleged ineffectiveness caused him prejudice. Resp. Ex. R at 62-63 (citing <u>Strobridge v. State</u>, 1 So. 3d 1240, 1242 (Fla. 4th DCA 2009), for the proposition that "[f]ailure to preserve issues for appeal does not show the necessary prejudice under <u>Strickland</u>"). Petitioner appealed, and the First DCA per curiam affirmed the postconviction court's denial of the amended Rule 3.850 motion. Resp. Ex. U.

This Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented.

Even assuming the state court's adjudication is not entitled to deference, this claim has no merit. At the close of the state's evidence, trial counsel moved for a judgment of acquittal arguing that "the state ha[d] not met their burden of proving the material elements." Resp. Ex. C at 292. The trial court denied the motion, finding that the state "established a prima faci[e] case." <u>Id.</u> The evidence presented at trial supports the jury's verdict. Additionally, the jury clearly did not find premeditation, as it convicted Petitioner of the lesser-included charge of attempted second degree murder rather than of the charged

crime of attempted first degree murder. Petitioner has failed to show a reasonable probability that the outcome would have been different had counsel argued the motion for judgment of acquittal as Petitioner suggests. Ground Four is due to be denied.

### E. Ground Five

Petitioner contends that his trial counsel was ineffective for failing to object to the improper bolstering of witnesses and the trial court erred by allowing the state to introduce hearsay statements of three witnesses.[6] Petitioner raised the ineffectiveness claim in his amended Rule 3.850 motion. In denying the claim, the postconviction court reasoned that Petitioner failed to show counsel's alleged deficiency caused him prejudice. Resp. Ex. R at 62-63 (citing Strobridge, 1 So. 3d at 1242, for the proposition that "[f]ailure to preserve issues for appeal does not show the necessary prejudice under Strickland"). Petitioner appealed, and the First DCA per curiam affirmed the postconviction court's denial of the amended Rule 3.850 motion without a written opinion. Resp. Ex. U.

On direct appeal, with help from appellate counsel, Petitioner argued, inter alia, that the trial court erred by allowing the state to introduce the

---

[6] Petitioner appears to concede that this ground has no merit. See Doc. 11 at 1 ("Petitioner is only going to address three issues (issues two, three, and four) . . . and will concede to the rest.").

hearsay statements of three witnesses made to Detective Swanson. Resp. Ex.
D. The state filed a response brief. Resp. Ex. E. The First DCA issued a written
opinion on the issue:

> Appellant, Tyree Harris, raises two issues on appeal from his conviction and sentence for attempted second degree murder. He asserts the trial court erred by admitting into evidence certain out-of-court statements made by several prosecution witnesses, and fundamentally erred under State v. Montgomery, 39 So. 3d 252 (Fla. 2010), by including the element of intent in the jury instruction on the lesser included crime of attempted voluntary manslaughter. We affirm because we conclude the challenged statements were admissible and the manslaughter instruction did not violate Montgomery.
>
> At trial, the state's witnesses included the victim and four eyewitnesses, one of whom is Appellant's father. All five testified that Appellant fought with the victim, retrieved a firearm from his apartment, shot the victim, and then fled the scene in his car. They identified Appellant in court as the shooter, and all but Appellant's father testified that shortly after the incident they identified Appellant from a photo lineup. The investigator who responded to the shooting scene also was a prosecution witness, and his testimony included, inter alia, statements made to him at the scene by three of the testifying eyewitnesses. The on-scene statements the deputy relayed to the jury were essentially identical to the testimony given by the eyewitnesses. The trial court admitted the out-of-court statements into evidence as prior consistent statements under section 90.801(2)(b), Florida Statutes. Under that provision, an out-of-court statement is not hearsay if the declarant testifies at trial, the statement is consistent with the declarant's testimony, and the statement is "offered to rebut an express or implied charge . . . of improper influence,

motive, or recent fabrication." § 90.801(2)(b), Fla. Stat. (2009).

> We agree the statements were not admissible as prior consistent statements because they were not offered for the purposes specified in the statute. But we find the statements were admissible under section 90.801(2)(c) which provides that an out-of-court statement is not hearsay if it is "[o]ne of identification of a person made after perceiving the person" and the declarant testifies and is subject to cross-examination. § 90.801(2)(c), Fla. Stat. (2009). See Puryear v. State, 810 So. 2d 901, 904 (Fla. 2002). The record thus provides us a basis to affirm the trial court's ruling. See Dade County Sch. Bd. v. Radio Station WQBA, 731 So. 2d 638, 644 (Fla. 1999).

Resp. Ex. I; Harris v. State, 42 So. 3d 863, 864 (Fla. 1st DCA 2010).

This Court addresses these claims in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record and the applicable law, the Court concludes that the state court's adjudications of these claims were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented. As such, Ground Five is due to be denied.

Accordingly, it is

**ORDERED**:

1.     The Petition (Doc. 1) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2.     The **Clerk of Court** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

3.     If Petitioner appeals the denial of his Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[7]

**DONE AND ORDERED** at Jacksonville, Florida, this 14th day of February, 2022.



TIMOTHY J. CORRIGAN
United States District Judge

JAX-3 2/11
c:
Tyree Harris, #J38617
Counsel of Record

---

[7] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.